CUSHMAN *versus* NORTH-WESTERN INSURANCE COMPANY.

A policy, after insuring $1700, upon a mill and fixed machinery, and $150 on moveable machinery therein, proceeded, *in written words*, as follows; "said insured being the lessee of said mill for one year from November 1st, 1850, and having paid the rent therefor of $2171,01, which interest, diminishing day by day, in proportion to the whole rent for the year, is hereby insured; — *Held*, that the policy was a valued one, although, in a *printed* part of the instrument, there was a provision that the "loss or damage should be estimated according to the true and actual cash value at the time such loss or damage shall happen."

The manuscript provision is to be viewed as the agreed basis, upon which to ascertain the true and just value.

Cushman v. North-Western Insurance Company.

In such a case, it is not competent for the defendant, (except for the purpose of proving a fraud practiced by the insured,) to introduce evidence that the rent, paid by the insured for the mill, was less than the sum stated in the policy.

On REPORT from *Nisi Prius*, HOWARD, J. presiding.

ASSUMPSIT, upon a policy of insurance against fire.

On October, 1850, the plaintiff took the lease of a cotton factory mill, for one year from November 1st, 1850. The lease stated the consideration to be $2171,01, then paid by the cancelation of bills for repairs and improvements already made upon the factory, by the lessee, this plaintiff.

On Nov. 8, 1850, the defendants in the *written* part of their policy insured the plaintiff " to the amount of $2000 ; viz. on the building and fixed machinery of the cotton mill, $1700 ; on moveable machinery therein, $150 ; on stock, raw and wrought, $150, said Cushman being the lessee of said mill for one year from Nov. 1, 1850, and having paid the rent therefor of $2171,01, which interest, diminishing day by day in proportion for the whole rent for a year, is hereby insured." Another part of the policy, being in *printed* words, was as follows : — the " said loss or damage to be estimated according to the true and actual cash value of the said property at the time such loss or damage shall happen."

The mill was destroyed by fire, Nov. 23, 1850, with all the machinery, and all, or nearly all the stock.

The policy prescribed the preliminary proceedings necessary to be taken by the insured in order to obtain the insurance money in case of loss, and it was admitted that those proceedings had been taken.

The defendants offered to prove that the amount of the repairs and improvements actually made upon the mill by the plaintiff, and estimated in the policy at $2171,01, was fifty per cent. less than that sum. The plaintiff consented that the defendants might show, if they could, that the plaintiff, when applying for the policy and before it was issued, represented to the defendants in any way, except by exhibiting his lease to them, that he had paid rent to the amount of

$2171,01; also that defendants might prove, if they could, that there was fraudulent collusion between the plaintiff and his lessor in computing the amount of the bills. For any other purpose, the plaintiff objected to the testimony.

The Judge ruled the evidence to be inadmissible, beyond the purposes thus assented to by the plaintiff. Whereupon the defendants declined to introduce it.

The defendants then contended that the plaintiff was bound to prove the extent and value of his interest in the property destroyed.

The Judge ruled that, as to the $1700 upon the building and fixed machinery, and as to the $150 on the movable machinery, the policy was a valued one. The plaintiff thereupon waived all claim as to the $150 upon the stock.

The defendants charged that in some material particulars, the survey and representations of the plaintiff were false and fraudulent. These charges were negatived by the verdict.

The jury returned a verdict for the plaintiff, assessing the damage, including interest, at $1872,12, with a special finding that the loss on the movable machinery was $151,79, which is included in the said verdict.

The case was submitted to the Court, with a stipulation, among others, that if the foregoing rulings of the Judge were correct, judgment should be rendered on the verdict.

*Fessenden & Deblois*, for the defendants.

1. The policy was not a valued one. The plaintiff was entitled to recover no more than the value of the property at the time of the loss. We offered to show that the building and fixed machinery were not worth the $1700.

In fire policies, indemnity for loss is all that can be recovered. To this effect is the case, *Lawrent* v. *Catham*, 1 Hall, 41. That was a New York case, and this is a New York policy. The defendant corporation is a New York institution, and the authority cited is a New York authority. *Lynch* v. *Darrill*, 3 Bron. Par. Cases, 497.

The *Saddlers'* *Co.* v. *Babcock*, 2 Atk. 554. This case shows a strong leaning of the Court against valued policies

in fire cases, unless the express language of the policy absolutely demands such a construction.

The language usually, if not universally employed to designate valued policies is, (after designating the property insured,) "valued at." We think we may safely say such is the universal mode of making a valued policy.

Judge DUER, in explaining what are valued policies, says, "It is valued when the parties *have agreed* upon the value of the interest insured, in order to save the necessity of further proof, *and have inserted the valuation in the policy,* in the nature of liquidated damages." 1 Duer, 97, § 4, 8, 9, 10.

In our policy there was no language constituting it a *valued policy.* The term, "valued at" was not used, nor any term tantamount to it. The words "said Cushman being the lessee of said mill, for one year from Nov. 1, 1850, and having paid the rent therefor, of $2171,01, do not amount to a valuation. He might have *paid more* or he might have paid *less* than the *actual value* of the lease. *Agreeing* that he paid such a sum for it, is not *agreeing* that this was the true value. At most it is but a description of the property, not a valuation.

Nor does the further clause, viz : "which interest diminishing day by day in proportion to the whole rent for the year is hereby insured," aid in making it a *valued* policy.

"Which interest," may better apply to the $1700 insured, than to the $2117,01 paid for rent; at all events, with just as much force to the $1700, the sum insured, as to the sum of $2117,01, paid for rent.

But suppose the language is equivocal, which is the most the plaintiff can claim for it — then we say we must apply the legal rules of construction.

Duer says : the true meaning of the parties must be collected from the *whole instrument,* not from separate consideration of doubtful clauses.

Apply this rule, and bring to your aid the subsequent provision in the policy, "that said loss or damage must be estimated according to the true and actual *cash value* of the said property at *the time* such loss or damage shall happen."

This provision absolutely extinguishes all pretence of a valued policy, and controls the language above referred to. The cash value *at the time* of loss, is to be the rule, and this value is to be proved, necessarily, because it might essentially vary between the time of effecting the insurance, and the time of the loss by fire.

It is of highest importance to preserve, between the assurers and the insured, every barrier to fraud.

If *value policies*, in fire insurance, were easily admitted, the room for fraud would be much enlarged.

On a policy, in which the property is fully, not to say extravagantly, valued, the temptation to carelessness, or fraud would be much increased. This is recognized in *Williams v. Mutual Fire Ins. Co.* 31 Maine, 220.

All the cases in the books, in which the properties in fire risks are *valued*, are cases in which the insurance companies were by their charter restricted as to the percentage they can take on the value of the property.

It is sometimes said that the *written* part of the policy controls the *printed*. But language is not to be wrested. All parts are to be equally considered. Written words have equal, but no more than an equal, effectiveness with printed ones. To allow more weight to one than the other is an indiscretion. Whenever done, it has been upon the narrow view of bending the law to avoid a particular mischief. The adoption of the rule could not fail to operate more extensive evils. I repudiate the idea that one part of the language shall supersede the other. Printing is but writing. Shall words in the Roman character have more force than Arabic? Shall a word have more or less effect, because the penman has formed the letters straight or sloping? The dogma contended for is senseless. Adherence to it is derogatory to any self-respecting tribunal. If adopted, what are its limitations? and upon what reason are they founded? In deeds of conveyance, in bills of exchange, in bills of lading, can it prevail? If words be in direct conflict, it may be that neither can stand. But if words in one of the forms *can* be con-

trolled by words in the other, it is only when they are absolutely irreconcilable, which is not the fact in the case at bar. The written recital of the sum paid for the yearly rent, is but a *description* of the property, and it stands consistently with the printed clause, which provides that such loss shall be estimated, "by the true and actual cash value of the said property at the time such loss or damage shall happen."

Suppose a freshet or a tornado had swept away the principal part of the building, and a fire should consume the rest, what would be the damage? It could be but the value of the part burnt. The original cost could be no element in the computation.

TENNEY, J. — Suppose it had been a distillery, and a law should pass prohibiting distilleries, and it should then be burnt, how could the damage be estimated?

*Fessenden.* — That law might *increase* the value of the *site.* But if the insurance was on the cash value of the building, and the *law* had destroyed its value, nothing could be recovered.

Should it be said, in this case, that the value of the interest, it being but a leasehold, is incapable of proof, and that, therefore, the policy must be treated as a valued one, the obvious reply is that such a value is capable of proof, and that evidence for such purposes is of every day's introduction. Beyond that loss, the defendant never intended to insure. And I offered to prove that the amount mentioned in the policy, as the rent, was fifty per cent. more than the reality.

But especially are we unable to perceive on what ground the Judge ruled, that the "movable machinery" was *valued* by the parties at $150, and that as regards this machinery, it was a valued policy.

The very nature of the articles insured, shows the parties could not have contemplated a valued policy. It was *moveable, changeable*; might be *more* in value one day and *less another.* It had nothing of a permanent character, such as it would hold during the whole time covered by the insurance. *Higginson.* v. *Dall,* 13 Mass. 102; *Holmes & al.* v. *Charles-*

*town Mutual Fire Ins. Co.*, 10 Met. 212; *Borden* v. *Hingham Mutual Fire Ins. Co.*, 18 Pick. 523; *Fuller* v. *Boston Mutual Fire Ins. Co.*, 4 Met. 206; *Williams* v. *Mutual Fire Ins. Co.*, 31 Maine, 220.

2. In excluding the evidence of the real value of the services paid by the plaintiff for the rent, there was error. It was a matter of fact, and the Judge admitted it was receivable for the purpose of proving fraud. If receivable for any purpose, we had right to lay it before the jury. The Judge might, in his charge, direct the application of it. Can the Court say, you shall tell me beforehand, the exact object for which testimony is offered? Must it be excluded, unless I will promise not to use it for some particular purpose? *McLelland* v. *Lindsay*, 1 W. & S. Penn. 360.

*W. P. Fessenden*, for the plaintiff.

TENNEY, J. — Is the policy in this case, in any respect a valued policy? A contract for insurance like others is to be construed upon an examination of the whole instrument, and therefrom the intention of the parties is to be ascertained. No particular form of words is required to give effect to the intention when discovered. It is proper to see what property was the subject of the policy. The plaintiff held a lease for the term of one year of the mill described, with all the privileges and appurtenances thereto belonging. The whole machinery of the mill both fixed and movable were evidently intended to be embraced. He had at the time of the insurance stock, raw and wrought, and it is apparent, that he expected, that such would continue to be in the mill, though it might change from time to time.

The defendants make insurance for the plaintiff against loss or damage by fire to the amount of $2000; $1700 of which is on the mill and fixed machinery, and $150 on the moveable machinery; the balance of the $2000 was on the raw and wrought stock. The property last referred to, is fully specified, and the policy so far was clearly open. But to prevent any question as to the portions before specified, the

o

policy states that "the said Cushman being the lessee of said mill for one year from Nov. 1, 1850, and having paid the rent therefor of $2171,01, which interest, diminishing day by day in proportion to the whole for the year, is hereby insured. By natural, and also by the most strict grammatical construction, the "interest" here referred to, was that which the plaintiff acquired by his lease. The raw and wrought stock could not have been the "interest," without a forced construction; and this is not insisted on by the defendants' counsel. No other interest or right of any kind is previously mentioned in the policy, and the plaintiff is not shown to have had any other right. The sum of $2000, and its subdivisions cannot be regarded as the interest insured, for that is the amount of the value upon which the insurance of the "interest" is made.

The lease was effectual between the parties thereto; and in an open policy, neither the plaintiff nor defendants would be benefited in any degree, by the insertion therein particularly, of the rent paid by the assured to his lessor; it was wholly immaterial and unnecessary. Again, if the policy was open, there was no occasion that it should recite, that the interest should diminish "day by day," &c. This would be only one element in the computation of the value of the loss, and one so obvious, especially if the policy was near its expiration, or had run any considerable time, that it could not be expected to be overlooked.

The price paid by the plaintiff for the lease, a few days before the policy was executed, may be presumed to have been in his opinion, the value of that interest, as he paid the consideration therefor in advance. And the defendants, when they executed the policy, which recited the price of the interest, must be understood as assenting to that as the value agreed upon.

1. It is objected, that the clause in the policy which is in the following words, is inconsistent with the construction contended for by the plaintiff; viz. "the said loss or damage to be estimated according to the true and actual cash value of

the said property, at the time such loss or damage shall happen." We cannot suppose that this clause in the printed part of the policy was designed to annul the meaning of previous matter, which was *written* in the blank. But effect must be given to every part of the instrument if possible. And it is believed that this may be done in the policy now before us, without doing violence to any provision found therein. The policy, so far as it was intended to cover the stock, was such as to require proof of the amount of loss or damage of that portion of the property. And although it was agreed that the loss or damage should be estimated according to the actual value at the time of the loss or damage, still the parties could fix upon a rule to determine this value. And if they had agreed that the actual value of the rent for any given period during the year, should be the same as for a like period at its commencement, such agreement would not be repugnant to the meaning of the clause we are considering. They did fix upon a basis, by which the cash value should be determined, and the value would vary daily by the application of the rule, and was not inconsistent with other parts of the policy.

2. It is insisted for the defendants, that the evidence offered, and rejected, excepting for the purpose of showing a fraud in the plaintiff, should have gone to the jury without restriction. If the representation of the value of the plaintiff's interest in the mill and machinery was made without fraud, it is not easy to perceive on what principle, the evidence offered was competent. The defendants were so satisfied with the plaintiff's estimation, that they adopted it, and had the benefit of the premium. And they could not change the value by proving simply, that others would have fixed upon a different estimation. To allow them to introduce the evidence offered for other purposes, than to prove a fraud, would be a permission to vary a written contract by parol testimony. *Judgment on the verdict.*