DAGGS v. THE ORIENT INSURANCE COMPANY OF HARTFORD, CONNECTICUT, *Appellant.*

In Banc, December 15, 1896.

1. **Foreign Insurance Company:** INTERSTATE LAW. A state may wholly exclude a foreign insurance corporation from doing business within its limits, or revoke a license already granted.

2. ————: ————. So the state may prescribe conditions upon which it will permit a foreign insurance corporation to transact business within its territory.

3. ————: ————: LEX LOCI CONTRACTUS. A fire insurance policy written on real property in Missouri and delivered to the owner and accepted by him in said state is a Missouri contract and will be construed according to the laws of Missouri.

4. ————: STATUTE: FEDERAL CONSTITUTION. Section 5897, Revised Statutes, 1889, providing that in all actions upon fire insurance policies "hereafter issued or renewed the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy, the full amount insured," is not in contravention of the constitution of the United States (Amendment 14, sec. 1) declaring that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States.

5. ————: ————: STATE CONSTITUTION. Such law is a general one and is therefore not within the prohibition of the constitution of this state against the enactment of local or special laws regulating the practice or jurisdiction of or changing the rules of evidence in any judicial proceeding or inquiry before the courts.

6. ———: ———: ———. The legislature may enact a general law. changing such rules even as to pending causes.

7. ———:· ———: ———. The provisions of sections 5897 and 5898 (R. S. 1889) being limited in their operation to policies thereafter issued they can not be deemed a violation of the state constitution (art. 2, sec. 15) prohibiting the passage of retrospective laws or laws impairing the obligation of contracts.

8. ———: ———: ———. The provisions of the state constitution (art. 2, sec. 4) declaring that all persons have a natural right to life, liberty, and the gains of their own industry, etc., do not prevent the enactment of laws restricting the powers of foreign insurance corporations doing business in this state.

*Appeal from Scotland Circuit Court.*—HON. BEN. E. TURNER, Judge.

AFFIRMED.

*McVey & Cheshire* for appellant.

(1) The defendant corporation is a person. *People v. Budd,* 117 Ill. 1; *Railway Co. v. Beckwith,* 129 U. S. 26; *Bank v. Billings,* 4 Peter, 514; *Northwestern F. Co. v. Town,* 3 Biss. 480; Cooley, Const. Lim. [6 Ed.], 484; *Leep v. Railway Co.,* 58 Ark. 407; *Railway Tax Cases,* 13 Fed. Rep. 722; *Santa Clara Co. v. Railroad,* 118 U. S. 394. (2) The statute violates the most fundamental principle of insurance, which principle is that the contract of insurance is one purely of indemnity; and enacts in its place a wager policy, which policy so enacted is contrary to the principles of insurance, which have always been construed to the effect that the insured will not be allowed to reap profits on account of casualty insured against. May on Insurance, sec. 2; Emerigon on Insurance, p. 13; *Insurance Co. v. Hughes,* 10 Lea, 461. (3) The statute is contrary to public policy, promotes crime, and offers a premium for fraud and arson, and endangers private property, which would otherwise be safe, by offering

premiums for setting fire to private property covered by insurance, and in all its tendencies is immoral. (4) The statute changes the rules of evidence within the meaning of the constitution of this state, and contrary to the course of the common law, in that the statute provides that regardless of the extent of the loss, and regardless of the common law rules of evidence, that no person shall recover except upon proof of damages sustained, and enacts in its place that the plaintiff shall not be required to prove the extent of his damages, neither shall the defendant be allowed to disprove the amount of his damages claimed, but by operation of the statute alone, the amount to be recovered in the case is adjudged, regardless of the damages sustained, the evidence, and the contract of the parties. Tiedeman on Limts. Police Power, p. 519; *Tift v. Griffin*, 5 Ga. 185; *Railroad v. Payne*, 33 Ark. 816; *Abbot v. Lindenbower*, 42 Mo. 162; *Young v. Beardley*, 11 Paige, 93; *East Kingston v. Towle*, 48 N. H. 57; *Allen v. Armstrong*, 16 Iowa, 508; *Conway v. Cable*, 37 Ill. 82; *White v. Flinn*, 23 Ind. 46; *Groesbeck v. Seeley*, 13 Mich. 329; *Lenz v. Charlton*, 23 Wis. 478; *Taylor v. Miles*, 5 Kan. 498; *Wright v. Ceadlebaugh*, 3 Nev. 341; Constitution, sec. 53, art. 4; Constitution, sec. 28, art. 2; Cooley on Const. Limt., p. 208; *Railway Co. v. Payne*, 33 Ark. 816. (5) The statute violates the first and most fundamental principle of the law of contracts, viz.: That there can, in fact, be no contract between parties unless the minds of the parties meet, and acquiesce in the thing contracted about. The statute makes the contract, without the meeting of the minds of the parties, regardless of the fact that the parties have agreed to a contract in terms directly opposite to what the statute compels. (6) The statute prevents parties from making their own contract in reference to a private matter of business, deprives the defendant of

its property without due process of law and takes private property and funds held in trust and gives it to a private individual without consideration and contrary to the written contract deliberately entered into between the parties, and is not uniform in its operation. *Ins. Co. v. Morse*, 20 Wall. 485; *Leep v. Railway Co.*, 25 S. W. Rep. 75; *State v. Loomis*, 22 S. W. Rep. 350. (7) It is clearly the duty of courts to hold every infringement of constitutional rights, and all constitutional provisions for the security of persons and property should be liberally construed. *Boyd v. United States*, 116 U. S. 616; *Ah Kow v. Neuman*, 5 Sawyer, 562; Ordronaux on Const. Leg., p. 418; Sedgwick, Stat. and Const. Law, p. 182; *Marbury v. Madison*, 1 Cranch, 137, 1 Kent, 448; *Bonham's* case, 6 Rep. 118; Cooley, Const. Lim., 44; *Muglar v. Kansas*, 123 U. S. 661. (8) There is no power in the legislature to regulate private contract and prescribe the conditions under which it shall conduct its business, although the business be that of a corporation, unless such contracts pertain to a public use, or are injurious to the morals, health, safety, or comfort of the people. *Ins. Co. v. Morse*, 20 Wall. 445; *People v. Budd*, 117 N. Y. 1; *Commonwealth v. Perry*, 14 L. R. A. 325; *Butchers, etc., v. Cresent City, etc.*, 111 U. S. 746; *New Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650; *Railroad v. McClure*, 10 Wall. 511; *Ins. Co. v. Debolt*, 16 Howard, 416; Sedgwick's Stat. and Const. Law, 637. (9) The effect of the statute is to deprive the defendant of its property without due process of law, within the meaning of the constitution of this state and of the United States, and the decisions in interpretation thereof. Story on Const. [5 Ed.], sec. 1943; Cooley on Const. Lim. [6 Ed.], 430; *Railway Co. v. Humes*, 115 U. S. 512; *Bank v. Okley*, 4 Wheat. 235; *Wally's*

*Heirs v. Kennedy*, 2 Yerg. 554; Story, Const. [5 Ed.],
sec. 1590; *State v. Loomis*, 22 S. W. Rep. 351; Strong
on Const. [5 Ed.], 1590, 1943; Cooley, Const. Lim. [6
Ed.], 430, 356. (10) The statute is in derogation of
the right of contract and the legislature had no power
to enact the statute under the police power of the state,
and it violates the fundamental constitutional pro-
visions. *State v. Loomis*, 22 S. W. Rep. 350; *State v.
Julow*, 31 S. W. Rep. 781; *Shaver v. Pennsylvania Co.*,
71 Fed. Rep. 931; Cooley on Const. Lim. 575; *Low v.
Printing Co.*, 41 Neb. 127; *Millett v. People*, 117 Ill.
294; *Forer v. People*, 141 Ill. 171; *Ex parte Kuback*, 85
Cal. 274; *Application of Jacobs*, 98 N. Y. 106; *People v.
Gillson*, 109 N. Y. 389; *State ex rel. v. Laclede, etc.*,
102 Mo. 472; Tiedeman on Police Power, 210; *New
Orleans Gas Co. v. Louisiana Light Co.*, 115 U. S. 650;
*Ex parte Whitwell*, 19 L. R. A. 727; *Ex parte Tuttle*,
91 Cal. 589. (11) Even if the legislature had power
to regulate and control insurance companies, yet the
act is unreasonable and consequently void. *Railroad
v. Minn.*, 134 U. S. 458; *Reagan v. Co.*, 154 U. S. 162;
*Ames v. Railroad*, 64 Fed. Rep. 165.

*A. J. Daggs* for respondent.

(1) The statutes involved in this case should be
held good on the ground of public policy. And similar
statutes have been held constitutional in other states
on this ground. *Reily v. Ins. Co.*, 43 Wis. 449. (2)
The statute was in force when this policy was issued.
A law passed before a contract was made can not
impair its obligation. *Bronson v. Rinsey*, 1 How. 311;
*Moor v. Fowler*, Hemp, 536; *Blair v. Williams*, 4 Lit.
54; *Robby v. Boswell*, 23 Ga. 51; *Powers v. Dougherty*,
*Ibid.*, 65; *Sparrow v. Railroad*, 7 Ind. 369; *Davis v.
Bronson*, 6 Iowa, 410; *Bruns v. Crawford*, 34 Mo. 330;

*Edwards v. Keory*, 96 U. S. 600. (3) A law existing at the time the contract is made and by which the contract is enforced, enters into and becomes a part of the contract as much as if it was referred to and made a part of its terms and does not impair its obligation. *Ellerbe v. Association*, 114 Mo. 501; *Havens v. Ins. Co.*, 123 Mo. 403; *Barnard v. Ins. Co.*, 38 Mo. App. 106; *Baker v. Ins. Co.*, 57 Mo. App. 559; *Pinney v. Pinney*, '81 Mich. 450. (4) And the constitutional prohibition relates to laws passed after the contract is made. *Lehi Water Co. v. Easton*, 121 U. S. 388; *Augdon v. Saunders*, 12 Wheat. 213. And it is immaterial where the law originated. *Williams v. Bruffy*, 98 U. S. 176. (5) And a law prohibiting the making of a contract is not a law impairing the obligation of contract. *Churchman v. Martin*, 54 Ind. 380. (6) Nor a law varying the consequence without changing the essence and character of the contract or altering the nature or obligations therein. *Gosey v. Nav. Co.*, 2 Watts & S. 156. (7) A state has full power to prescribe the conditions on which an insurance company may carry on its business therein (*State v. Stone*, 118 Mo. 388), and regulate foreign insurance companies doing business in a state. *State v. Phips*, 31 Pac. Rep. 1097; *Paul v. Virginia*, 8 Wall. 168; *Ducat v. Chicago*, 10 Wall. 410; *Ins. Co. v. Mass.*, *Ibid.* 566. (8) The statute can not be stipulated away and any attempt to do so will be held invalid, and this character of a stipulation is what the statute of this state strikes at. R. S. 1889, sec. 5898. If it was otherwise, the public would not be safe, law would become a farce, the strong would take advantage of the weak. Hence it has been often held that no contract can change the law. *Havens v. Ins. Co.*, *supra*, and cases cited at page 417. (9) Where a corporation recognizes a statute by doing business under it, it is estopped from denying its constitu-

tionality when it finds that the law imposes a liability on it. *Railroad v. King*, 98 Miss. 852; *Collier v. Morrow*, 90 Ga. 148. (10) Insurance company waives its right by acting under the law. *State v. Ins. Co.*, 15 S. Rep. 347. And a statute does not deny a corporation the equal protection of the law if it treats them all alike (151 U. S. 556); *Railroad v. Bristol*, 14 Sup. Ct. U. S. 437. (11) And a law which changes the rules of evidence relates to the remedy only and may be applied to cases existing at the passage of the act. *O'Bryan v. Allen*, 108 Mo. 227. (12) As to whether this is a local or special law, and, therefore, in contravention of section 53, article 4, constitution, has been settled by the following cases: *Ex parte Swan*, 96 Mo. 44, 50, citing and affirming *State ex rel. v. Pond*, 93 Mo. 606. And see *State v. King*, 74 Mo. 612; *State v. Jackson*, 80 Mo. 175.

GANTT, J.—Action upon a fire insurance policy issued upon a barn belonging to respondent in Scotland county, Missouri, on the third day of June, 1893, for $800, by a corporation organized in Connecticut.

The policy contained a clause limiting the company's liability "in case of loss to the actual cash value of the property at the time of the loss," and this stipulation was pleaded together with an averment that at the time said property was insured said barn did not exceed $100 in value. No fraud was charged, or *any subsequent* depreciation in the property prior to the fire.

It is apparent from the foregoing dates that the policy was written and delivered *after* sections 5897, 5898, Revised Statutes, 1889, had been enacted by the general assembly of this state.

Section 5897 provides that: "In all suits brought upon policies of insurance against loss or damage by

fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the measure of damage shall be the amount for which ·the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant; and in case of partial loss, the measure of damage shall be that portion of the value of the whole property insured, ascertained in the manner hereinafter prescribed, which the part injured or destroyed bears to the whole property insured.''

Section 5898 provides that no condition of any policy of insurance contrary to the provisions of ''this article'' [meaning thereby article 4] shall be legal or valid.

The defendant, in its answer, averred that these two sections were unconstitutional, and were in contravention of the constitution of Missouri and the constitution of the United States.

To this plea the circuit court sustained a demurrer, and, defendant declining to plead further, judgment was rendered for the amount of the policy. All other questions were settled in favor of plaintiff by the admissions of defendant.

A statute similar in principle to the statute above quoted was construed by this court *in banc* in *Havens v. Insurance Co.*, 123 Mo. 403, and full effect given to its provisions. Section 6009, R. S. 1879. It was pointed out in that case that laws of this character had been enacted in many of the states of the union, and uniformly sustained, as entering into and molding

insurance contracts thereafter written in said states. *Insurance Co. v. Leslie*, 24 N. E. Rep. (Ohio Supreme) 1072; *Chamberlain v. Insurance Co.*, 55 N. H. 249; *Reilly v. Insurance Co.*, 43 Wis. 449; *Emery v. Insurance Co.*, 52 Me. 322.

In those cases it is true, the constitutionality of the several statutes was not directly passed upon; but the fact that so many courts of last resort have uniformly sustained such enactments is a most cogent reason why this court should proceed with the utmost care in the determination of their validity with reference to the charge that they conflict with the constitution of the United States and of this state.

If sections 5897, 5898, Revised Statutes 1889, are not unconstitutional, they must be held, according to the great weight of authority, to enter into and form a part of the contract of insurance as fully as if written into it; and, if any of the stipulations of the policy conflict with the statute, such stipulations must yield to the law. *Havens v. Insurance Co.*, 123 Mo. 403, and authorities there cited.

By the terms of the two sections under consideration they only apply to contracts of insurance *"issued or renewed" after* the said sections went into effect. They are, then, wholly prospective in their operation, and the insurance in this case was written long after said sections became the law of Missouri. So that, when the defendant insurance company entered into this contract, it was apprised of the law of this state which prohibited a stipulation in its policies that it would only be liable for the actual value of the property destroyed, and that the statute, by its terms, annulled this provision of the policy.

The defendant assails this statute on the ground that it violates section 1 of the fourteenth amendment of the constitution of the United States. As a predi-

cate for this position defendant argues at length, and cites authorities to show that "a corporation" is "a person," within the meaning of the constitution of the United States. *Railroad v. Mackey*, 127 U. S. 205; *Santa Clara Co. v. Railroad*, 118 U. S. 394.

But granting that a corporation is a person, within the meaning of the constitution, for *certain purposes*, surely no proposition is better settled than that the constitution of the United States nowhere deprives this state of the power and right to prescribe the conditions upon which it will permit foreign corporations to do business within its boundaries. *Paul v. Virginia*, 8 Wall. 168; *Philadelphia Fire Ass'n v. New York*, 119 U. S. 110; *Doyle v. Insurance Co.*, 94 U. S. 535; *Bank v. Earle*, 13 Pet. 519. Again and again it has been held that the whole matter of admitting foreign corporations to do business in the state rested absolutely in the discretion of the legislature of the state. The terms it imposes may be reasonable or unreasonable. The comity ordinarily extended is accompanied by no legal sanction. The state, having extended it, may at any time revoke it. This is the doctrine steadily maintained alike by state and federal decisions. *Doyle v. Wisconsin*, 94 U. S. 50; *Doyle v. Ins. Co., Ibid.* 535; *Ducat v. Chicago*, 10 Wall. 415; *Ibid. v. Ibid.*, 48 Ill. 172; *Insurance Co. v. French*, 18 How. 404; *Railroad v. Koontz*, 104 U. S. 11; *Carroll v. East St. Louis*, 67 Ill. 568; *Insurance Co. v. Davis*, 29 Mich. 238; *Noble v. Mitchell*, 46 Am. & Eng. Corp. Cas. 525; *State ex rel. v. Root*, 83 Wis. 667; *Dugger v. Insurance Co.*, 32 S. W. Rep. (Tenn.) 5.

The state has the power to prevent the making of contracts within its borders by foreign corporations altogether, or it may impose such terms as it may deem expedient, provided they do not conflict with the exclusive powers of congress.

In the case of *List v. Com.*, 118 Pa. St. 322, it was held that the state has power to prescribe conditions under which foreign corporations shall do business in that state, the court saying: "We can not regard the questions presented by this record as open questions in any sense. They are all settled emphatically and decisively by the decision of the supreme court of the United States in the case of *Paul v. Virginia*, 8 Wall. 168."

In *Paul v. Virginia, supra*, the facts, briefly stated, were that Paul, a citizen of Virginia had been appointed agent of several insurance companies organized and chartered by the state of New York. He filed his authority to act as their agent, and complied, or offered to comply, with all the laws of Virginia prerequisite to a license to solicit and write insurance in said state, excepting the provisions requiring a deposit of bonds with the treasurer of the state, and the production to the licensing officer of the treasurer's receipt for said bonds. A license was refused him. He thereupon undertook to do business without such license, and was indicted and convicted. On writ of error to the supreme court of the United States his conviction was affirmed. It was contended in his behalf that the Virginia statute was in conflict with that clause of the constitution which declares that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states," and the clause which vests in congress the exclusive power "to regulate commerce with foreign nations, and among the several states."

It was held by the supreme court that issuing policies of insurance is not a transaction of commerce. They are not interstate transactions, though the parties thereto are domiciled in different states. They are local transactions, and governed by local law. As to

"the privileges and immunities secured to citizens of each state in the several states" by the other clause relied upon, it was held they were "those privileges and immunities which are common to the citizens in the latter states under their constitution and laws by virtue of their being citizens." "It was not intended by the provision to give to the laws of one state any operation in other states." Said Mr. Justice FIELD: "Now a grant of corporate existence is a grant of special privileges to the corporators, enabling them to act for certain designated purposes as a single individual, and exempting them (unless otherwise specially provided) from individual liability. The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in *Bank of Augusta v. Earle*, 'it must dwell in the place of its creation, and can not migrate to another sovereignty.' The recognition of its existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy."

If anything can be deemed settled by adjudication, then it is settled that a state can impose upon foreign insurance corporations seeking to transact insurance business in such state such terms and conditions as it may deem proper or *may wholly exclude them*. It follows then, that this act did not curtail any right vouchsafed to defendant by virtue of being a citizen of the state of Connecticut. As such corporation, it had no rights in this state save those extended by the comity of the state; and *its attempt to limit its liability* in case of loss to the actual damages was repugnant to the policy *of Missouri as expressed in the statute above*

*quoted.* The policy having been written on real property in this state, and delivered to the owner and accepted by him in Missouri, we hold it to be a Missouri contract, to be construed according to our own laws.

No claim can be made that it makes any unjust discrimination against citizens of other states in favor of our own, or denies them the "equal protection of our laws," as the statute, by its terms, applies alike to all fire insurance companies, whether foreign or domestic. *Railroad v. Mackey*, 127 U. S. 205; *Railroad v. Emmons*, 149 U. S. 364.

II. The learned counsel for defendant have filed a most elaborate brief, a large portion of which is directed at the supposed bad policy of the statute,—an argument much more appropriate before the legislature than this court. They insist it violates the fundamental idea of insurance, which is indemnity; that it encourages arson; that it increases the cost of insurance.

The time allotted us will not permit a discussion of such considerations, even if we felt called upon to defend the wisdom of the legislature. It is well known that the practices of the insurance companies, both life and fire, led to the legislation now so strenuously attacked. Promises held forth to the assured in the polices in use when this and similar statutes were enacted had "too often proven a delusion and a snare," and, as the courts were powerless to correct the evil, the legislature interposed, not only in Missouri, but in many of the states of the union, to remedy the wrong.

The manifest policy of the statute is to prevent, rather than encourage, overinsurance, and to guard, as far as possible, against carelessness, and every inducement to destroy property in order to procure the insurance upon it. It was also designed to prevent insurance companies from taking reckless risks in

order to obtain large premiums by advising them in advance that they would be held to the value agreed upon when the insurance was written.

No company is bound to insure any piece of property without first making a survey and examination of the premises, and it is not compelled to insure the full value then. But having the opportunity to inspect fully before insuring, and then fixing the amount of the risk, and receiving the premium based upon such valuation, it ought to be forever estopped, in case of a total loss, from denying the valuation agreed upon; and such was the law long before this statute was enacted. Wood, Fire Ins., sec. 43, and cases cited; *Cushman v. Insurance Co.*, 34 Me. 487.

The policy of the law seems to us wise and wholesome, but, if it were not, it is the province of the legislature to repeal it, and not ours to usurp legislative authority. More care in the selection of agents and more care in the inspection of the insured property will dispense with many of the objections urged against the policy of this statute.

Long prior to the enactment of this statute "valued policies" were in use as the result of contracts. By a "valued policy" a valuation was fixed in advance by way of liquidated damages to avoid making a valuation after the loss had occurred. Such agreements have been uniformly upheld against the claim that they were wagering contracts (*Insurance Co. v. Weiss*, 106 Pa. St. 20; May, Ins., sec. 30, in note 1, and cases cited); the construction put upon a "valued policy" being that the sum agreed upon was *conclusive*, both at law and in equity, *save in cases of fraud*.

III. But it is urged that this statute changes the rules of evidence within the meaning of the constitution of Missouri. Const., art. 4, sec. 53.

That section, so far as applicable here, is in these

words: "Section 53. *Special and local laws prohibited.* —The general assembly shall not pass any local or special law: * * * Regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts."

Obviously, this prohibition, by its terms, applies only to *special* or *local* laws. The enactment which defendant is combating is a *general* law, applicable not to a special locality, but to the entire commonwealth. It is wholly prospective in its operation, and hence does not affect any special proceeding or inquiry in any court at the time of its passage.

That the legislature, however, may enact a general law changing existing rules even as to pending causes no longer admits of a doubt. Cooley, Const. Lim. [6 Ed.], pp. 450, 451; *Rich v. Flanders*, 39 N. H. 304; *O'Bryan v. Allen*, 108 Mo. 227.

IV. Defendant also invokes section 15, article 2, of the constitution of Missouri, which provides "that no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be passed by the general assembly."

It is perfectly apparent that this act in no sense whatever partakes of the nature of an *ex post facto* law, and could, by no stretch of construction, be retrospective in its operation. It would hardly seem that a court should have been called upon to decide that the provision as to the impairment of the obligation of contracts necessarily referred to laws made *after* the particular contract in suit was entered into, but such was the case, and it was so ruled in *Lehigh Water Co. v. Easton*, 121 U. S. 388.

Further discussion upon this point would be useless, further than to add that for the same reasons these sections do not conflict with section 10, article 1, of the

Daggs v. Ins. Co.

constitution of the United States, which also forbids *ex post facto* laws, and all laws impairing the obligation of contracts.

V.   The learned counsel for defendant insists further that this statute, which prescribes that the measure of damages in case of a loss shall be the amount for which the property was insured, is unconstitutional, in that it conflicts with article 2, section 4, of the constitution of Missouri which ordains: "That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design."

This last and final contention is based upon the assumption that a foreign corporation, admitted into a state under positive statutory restrictions as to its power to contract, nevertheless has all the freedom to contract that a natural person or citizen would have. In a word, their position is this:   They concede, they say, that a state may exclude a foreign corporation altogether from its limits, but, if it does admit it to do business, then all the conditions imposed as the price of admission instantly vanish by virtue of the constitutional guaranty of all "the privileges and immunities of citizens of the several states."

The premise is fatal to the conclusion reached. Corporations are not citizens within the meaning of the clause of the constitution invoked by defendant.   The decisions of the supreme court of the United States which hold that no state can regulate foreign or interstate commerce, or prevent a corporation from performing service for the United States government, or deprive a corporation of the right to re-

move a cause to the federal courts, have not the slightest application to the question now under consideration.

The supreme court of the United States, in those cases, merely decided that, in so far as the character, business, or property of a foreign corporation partakes of the nature of those subjects over which the constitution gives congress exclusive control and denies the state any control, the foreign corporation itself is removed from control of the state. This is not so, however, because it is a foreign corporation, or in distinction from other citizens or business interests, but *solely* because it occupies a position, or is engaged in a business, reserved wholly to federal control,—a familiar illustration being the exclusive right of congress to legislate on the subject of patent rights, and a foreign corporation owning a national patent could not be controlled by state legislation. So, also, a foreign corporation engaged in foreign or interstate commerce.

But in each of these cases it is specifically pointed out that "writing and issuing a policy of insurance is a purely local transaction, wholly subject to the law of the state where the transaction is had, and that as to such contracts the company's rights are limited or restricted by the state law." Those exceptions are noted to the general rule that a state has the absolute power of exclusion, and this power includes the right to allow a conditional and restricted exercise of corporate powers by a foreign corporation within the state. *Bank v. Earle*, 13 Pet. 519; *Insurance Co. v. French*, 18 How. 404; *Ducat v. Chicago*, 10 Wall. 410; *St. Clair v. Cox*, 106 U. S. 350; *Pembina, etc., Co. v. Pennsylvania*, 125 U. S. 181.

Having availed itself of the privilege of doing business in this state under the restrictions of a statute which prescribed the effect of its contracts of insurance,

it must be governed by the laws of this state.    It must be held, upon every principle of good faith, to have assented as to such business to restrictions imposed, and to have its undertakings evidenced by policies here made complete, and enforced as a like contract by our own domestic companies would be; and it is in no position to enter upon the consideration of the power of this state to enact such laws.    If the defendant did not desire to abide by our laws, it could have desisted from writing insurance on property and soliciting insurance in this state.    *Insurance Co. v. Levy*, 33 S. W. Rep. (Tex. Civ. App.) 992; *Thwing v. Insurance Co.*, 111 Mass. 93.

While it was perfectly competent for the state to have imposed more onerous burdens upon such foreign companies, it has not done it, and defendant has no right whatever to complain of the policy of our laws. The defendant did contract under this act, did take the premium and retain it, and now that the loss has occurred it must pay the loss.    The judgment is affirmed. BRACE, C. J., and MACFARLANE, SHERWOOD, BURGESS, and ROBINSON, JJ., concur in the opinion.    BARCLAY, J., concurs in affirming the judgment for reasons given in his opinion in *State v. Loomis*, 115 Mo. 307, 21 L. R. A. 789; 1 Thayer, Cas. Const. Law, p. 935, 22 S. W. Rep. 353.