Raymond H. JOHNSON, Respondent,

v.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a Corporation, Appellant.**

No. 49862.

Supreme Court of Missouri,

Division No. 2.

Dec. 9, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 13, 1964.

Frank J. Rogers, Kansas City, Lynn M. Ewing, Jr., Nevada, Mo., for appellant.

Everett Teel, Nevada, Mo., Sylvan Bruner, Pittsburg, Kan., Arthur C. Popham, Kansas City, for respondent. Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

BARRETT, Commissioner.

This is the third trial and appeal of an action under the Federal Employers' Liability Act and it is not necessary therefore to again detail the circumstances as the jury could and did find them. The testimony was substantially the same in all three trials and of necessity the railroad concedes, as the court held upon the first appeal, that in at least two particulars its liability was a jury question. Johnson v. Missouri-K.-T. R. Co., (Mo.) 334 S.W.2d 41; Johnson v. Missouri-K.-T. R. Co., (Mo.) 355 S.W.2d 32. It is sufficient here to say that the plaintiff Johnson was a member of a three-man maintenance crew consisting of himself, his fellow laborer Smeithers and his foreman Hamilton and that he claims to have been negligently injured near Kimball, Kansas, on October 17, 1957, while he and Smeithers at the direction of Hamilton were carrying a main line tie and attempting to load it on a motorcar. Upon this appeal the railroad contends that because of two prejudicially erroneous instructions and the court's failure to sustain its challenge for cause of juror Wade it is entitled to a third new trial and, failing in that regard, urges in any event that the verdict is excessive.

Mr. Teel of Nevada, Missouri, was associated as local counsel with plaintiff's Kansas City and Pittsburg, Kansas, counsel. In qualifying the jury it developed that 17 or 18 years ago Mr. Teel had represented Mrs. Wade and presently was engaged in handling her mother's estate in which she was interested as a beneficiary. She said, however, in response to defense counsel's inquiry that the fact of such representation would not cause her "to be influenced in favor of his side of the case." Subsequently the court inquired of Mrs. Wade whether the fact of Mr. Teel's representing her "and the other heirs" would "make any difference to you in deciding this case in accordance with the law and the evidence and to bring in a fair and impartial verdict, if you were chosen?" She responded, "I see no reason why it should." Whereupon the court refused to sustain defense counsel's challenge for cause. Mrs. Wade was stricken from the panel by defendant and eleven jurors returned a plaintiff's verdict of $70,000.

It is now said that Mrs. Wade's response to the court's question was "evasive," and that by reason of her relationship with Mr. Teel she was not qualified to sit as a juror and should have been excused "for cause." In counties of 60,000 to 200,000 population the relationship of attorney and client within six months confers upon the opposing party "the right to challenge such juror for cause." V.A.

M.S. § 495.150. There is no such statutory disqualification applicable to Vernon County jurors (V.A.M.S. § 494.190) but the appellant urges, nevertheless, that the disqualification should apply and that the court prejudicially erred in refusing to sustain its challenge of Mrs. Wade. It is not necessary to pursue this subject at length, the enumerated statutory disqualifications are not preclusive (Murphy v. Cole, 338 Mo. 13, 88 S.W.2d 1023, 103 A.L.R. 505) and there would have been no abuse of discretion in the court's sustaining the challenge. Hicks v. Simonsen, 307 Mo. 307, 270 S.W. 318; Privitt v. St. Louis-San Francisco Ry. Co., (Mo.) 300 S.W. 726. There are commanding instances, as the employer-employee relationship in Murphy v. Cole, but there is a discretion in the trial court and that court's judgment will not be set aside unless there has been a manifest invasion of a fair trial. Strahl v. Turner, (Mo.) 310 S.W.2d 833, 69 A.L.R.2d 646; Moss v. Mindlin's, Inc., (Mo.) 301 S.W.2d 761. Here there was full disclosure and in the absence of a specifically applicable statute "a juror is not absolutely disqualified because he is presently the client of an attorney for one of the parties." Annotation 72 A.L.R.2d 673, 682, "Professional or business relations between proposed juror and attorney as ground for challenge for cause." And see 31 Am.Jur. (Jury) Sec. 205, p. 173; 50 C.J.S. Juries § 221b, p. 961; Pioneer Construction Co. v. Schmidt, (Mo.) 192 S.W.2d 859. In short, in the circumstances of this particular record manifest abuse of discretion is not plainly apparent or demonstrated.

In the second trial Johnson submitted the railroad's liability in a single-sentence instruction of over 800 words. Because the instruction was argumentative, too complicated and misleading the judgment was reversed. (355 S.W.2d 32). In this the third trial the railroad's liability was submitted in two separate instructions. Instruction 1 submitted the hypothesis that the foreman directed Johnson and Smeithers to load two main line ties "of the weight of about 200 pounds" and that in carrying ties the distance involved here "there was then a long standing general custom of defendant that three sectionmen," including the foreman if sectionmen were not available, "were usually and generally provided and used to carry and handle same," that it was not safe for two employees and "that defendant failed to use ordinary care to furnish reasonably sufficient help in said task," that the foreman knew of the custom and hazard and that while Johnson was thus helping to carry a tie (the second one) his body was suddenly and violently twisted and he was injured.

The appellant makes four specifications of error against this instruction. Space does not permit of a detailed recitation and analysis of the arguments, basically the appellant's rather ingenious technique is to analyze the plaintiff's pleadings, set forth in detail the proof and then assert that the instruction was prejudicially erroneous in not including all these numerous elements. As indicated it is not necessary to consider each of these claims in detail, they have all been considered and it is sufficient to dispose of this phase of the appeal to demonstrate by a single illustration the appellant's basic contention. The appellant first states what it says was "the real point in issue," the details of the manner in which Johnson and Smeithers picked up and were carrying the tie are set forth and it is said that each of these items of proof was not hypothesized or submitted as the proximate cause of plaintiff's injury. It is asserted that plaintiff's evidence established the weight of the tie to be 300 pounds, that the instruction omitted this fact and failed to require a finding "that plaintiff was in a strain from carrying the tie" and authorized a verdict upon a finding of a 200 pound tie. In this and other respects it is urged that the instruction erroneously authorizes "a verdict on a general finding of negligence and injury to plaintiff" rather than upon plaintiff's specifically alleged and established circumstances.

■ As the appellant points out, there have been instances in which verdict-directing instructions were manifestly erroneous in their failure to hypothesize and submit both factually and in theory the precise circumstances relied on "the existence or nonexistence (of which) was a sharply contested issue." Brainard v. Missouri Pacific Railroad Co., 319 Mo. 890, 898, 5 S.W.2d 15, 18; Lairson v. Kansas City Rys. Co., (Mo.App.) 232 S.W. 484. But as indicated it is not necessary to a disposition of this appeal to examine in detail each of the complaints and demonstrate that singly or in their totality they are not well taken. The plaintiff was not conclusively bound by either his pleading or proof to a tie weighing 300 pounds. The allegation was helping carry a tie of "approximately 200 pounds or more," and even though Johnson once said, "(j)ust glancing at it there," it weighed "around 300 pounds," he and others repeatedly said "approximately two hundred pounds." The defendant claimed that there was no such "occurrence" as Johnson described, in short the railroad's contention was that he was not injured either accidentally or negligently on the occasion or in the manner claimed by the plaintiff and his witnesses and that was the crucial issue in this case and throughout all three trials. But as to the basic theory of recovery and in answer to the appellant's objection to instruction 1 it is only necessary to note the following from the opinion in the first appeal: It was held in the first place, in so far as instruction 1 is concerned, that "the evidence was sufficient to warrant a submission of negligence in doing this work with an insufficient number of workmen. * * * As noted, plaintiff had evidence that it was the usual custom and practice to use three men to carry and load main line ties for such distance as was required in this case. Plaintiff also had evidence that more than two men were required because the tie being carried when plaintiff was injured was larger and heavier than the average main line tie." Or, in conclusion as to this phase of the instruction, the court said, "Plaintiff's evidence would have warranted the submission of either the theory that it was the usual custom and practice to use three men for carrying and loading all main line ties and that using less was not a reasonably safe method of work; or the theory that defendant through its foreman knew or in the exercise of ordinary care should have known that the second tie to be loaded was an unusually large and heavy tie and for that reason required more than two men for reasonable safety in loading it." 334 S.W.2d 1. c. 46. Instruction 1 was patterned after and followed these suggestions. The testimony was substantially the same upon this and the former trials and further demonstration is unnecessary to indicate that the instruction was not prejudicially erroneous in any of the respects now urged. Timmerman v. Terminal Railroad Ass'n. of St. Louis, 362 Mo. 280, 293, 241 S.W.2d 477, 483; West v. Kurn, (Mo.) 148 S.W.2d 752, 755; Brock v. Mobile & Ohio R. Co., 330 Mo. 918, 51 S.W.2d 100.

■ Employing the same technique and relying for the most part on Hawley v. Lusk, (Mo.App.) 184 S.W. 1173, it is urged that instruction 2 was prejudicially erroneous in that it too submitted the violation of a custom that when two men were carrying a tie they would "co-ordinate their movements and one would warn the other if he undertook to change his hold and shift the weight of a tie." It is said that the instruction submits this custom "conjunctively" with the act of Johnson's coemployee Smeithers "in suddenly and violently pushing the tie against plaintiff," and in these respects "includes an erroneous statement of law." Here it is not necessary to even illustrate, it is sufficient to again quote from the opinion in the first appeal: "As to defendant's contention that liability cannot be based on Smeithers' failure to warn, because he did not have time to do so, we consider this to be a jury issue. Plaintiff and Smeithers disagreed on whether there was a practice with respect to giving a warning when a man was about to shift or change his hold on a tie." And

finally, applicable to this particular instruction: "Our conclusion is that the jury reasonably could find that a warning could and should have been given by Smeithers before he undertook to change his handhold and that failure to do so was negligence." 334 S.W.2d 1. c. 45. Whether a custom is "substantive" in character or only "evidentiary" the plaintiff was not required to submit every specified act of negligence charged or shown by some testimony (Timmerman v. St. Louis Architectural Iron Co., 318 Mo. 421, 436, 1 S.W.2d 791, 797) and it is not claimed that there was no evidentiary support for any of the hypotheses of the instruction. Hamilton v. Ross, (Mo.) 304 S.W.2d 812, 815–816; Mitchell v. Wabash Railway Co., 334 Mo. 926, 69 S.W.2d 286. In any event, instruction 2 was not manifestly erroneous for the ultimately assigned reason that it "includes an erroneous statement of the law."

On the first trial there was a verdict of $45,000, on the second trial a verdict of $30,000, and the essentially meritorious question on this appeal is whether after a trial court remittitur of $10,000 from a $70,000 verdict the award of $60,000 is nevertheless excessive and necessarily subject to a further reduction. As with liability the defendant contended and its medical proof tended to show that there was no injury, but the plaintiff's evidence was that he sustained, as indicated, a negligently inflicted injury, that the injury was permanent and that he was totally disabled in so far as heavy labor is concerned. There has been medical expense of $1,450, a loss of earnings of approximately $250 a month or in the six years since October 1957 special damages approximating $18,000. It is not necessary to detail the medical testimony, it is sufficient to say that his injury as the jury necessarily found it involves a disk. A general practitioner who saw Johnson, he says on more than 100 occasions, came to the final diagnosis of "a ruptured intervertebral disk, sometimes known as a disk syndrome." This doctor found some atrophy, possibly a quarter

of an inch in the calf of the left leg and three-quarters of an inch in the thigh. An orthopedist who saw Johnson on three occasions, 1958, 1959, 1962, found by X ray "a spondylolisthesis which actually is a displacement of the vertebrae so that they are not in line." This doctor found some atrophy in the buttocks but his final diagnosis was "clinical symptoms of a ruptured disk." This doctor "originally" felt that there should be a "stabalization of his back and an unroofing of the spinal canal" which would stabilize the fifth lumbar and first sacral vertebrae and "relieve some pain" even though he would not be "a hundred per cent recovered." Finally, this witness said, "I say he has pressure on the nerves. To me, this man may or may not have a disk, that's right, but he has the pressure." Another plaintiff's witness, a chiropractor, found the fourth lumbar vertebra to be "subluxated, or tilted with the transverse inferior."

Johnson is now 43 years old, he is six feet one and at the time of his injury and now weighs 230 pounds. Throughout, according to the plaintiff and his witnesses, there has been pain but his sole and basic injury is what for the lack of a more accurately descriptive term may only be called a *diagnosed* ruptured disk, perhaps that is what the orthopedist means by "clinical symptoms." There has been no myelogram and it has not been conclusively demonstrated that there is in point of irrefutable fact a ruptured disk between the fifth lumbar and first sacral vertebrae.

The first disk case in this court was Hayes v. Wabash R. Co., 360 Mo. 1223, 233 S.W.2d 12, in 1950. There as here there was only a diagnosis of a ruptured disk between "the fifth lumbar vertebra and the sacrum." The plaintiff was a brakeman, age 40, the trial court had required a remittitur of $10,000 from a $55,000 verdict and this court required a further reduction of $7,500 to a final award of $37,500. In 1952, in Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42, the plaintiff, 46 was a fireman, there was a myelogram, and two

ruptured disks were surgically removed, the one at the fourth lumbar being larger than the one at the fifth. The nature and extent of the plaintiff's injury and disabilities were considered at length, the cases to date were examined and again, after a $10,000 remittitur by the trial court from a $55,000 verdict, a further remittitur of $7,500 was required. In Van Norman v. Illinois Central Railroad Co., (Mo.) 320 S.W.2d 512, the plaintiff railroad worker was 28, ruptured disks between the 3rd, 4th and 5th vertebrae were surgically removed but a verdict of $62,400 was reduced to $47,400. In the same year, 1959, in Beard v. Railway Express Agency, Inc., (Mo.) 323 S.W. 2d 732, "(b)y operative surgery the fibrous neural arch, including the small detached lamina, was excised and the impingement upon the nerves to some extent decompressed," and there was "a permanent defect" after maximum improvement. The plaintiff was 54, there was a loss of wages of $10,500, the trial court required a remittitur of $20,000 from a $68,000 verdict but this court required a further remittitur of $10,000. Most recently, 1962, in Chambers v. Missouri Pacific Railroad Company, (Mo.) 356 S.W.2d 64, the ruptured disk cases (all railroad cases under F.E.L.A.) with their attendant disabilities and losses were all collected and reviewed. There the plaintiff was 42 and had an expectancy of over 31 years and his disability as a heavy equipment operator was said to be permanent. In that case there was also a mere *diagnosis* of "a herniated cervical disc at the level of C–5—C–6 on the right." The trial court required a remittitur of $5,000 from a verdict of $43,000 and this court "in view of the precedents" declined to require a further remittitur from the final judgment for $38,000.

In again reviewing the relevant cases it is not necessary to restate the rules governing remittitur practice in this jurisdiction and set forth all the factors involved, the most important principle from this court's standpoint in connection with compensation for negligently inflicted injury is "reasonable uniformity of awards." Van Norman v. Illinois Central Railroad Co., Mo., 320 S.W.2d 1. c. 517. Even after making allowance for the established special losses and with all deference after the reduction required by the trial court, all the factors considered the $60,000 judgment is manifestly excessive by $15,000. If, therefore, plaintiff will remit $15,000 within fifteen days, the judgment will be affirmed as of the date of its rendition for $45,000; otherwise the judgment will be reversed and the cause remanded for a new trial.

STOCKARD, C., concurs.

PRITCHARD, C., not participating.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.