B. F. BRAINARD v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—
5 S. W. (2d) 15.

Division One, April 11, 1928.

*James F. Green* and *Thomas J. Cole* for appellant.

*Douglass & Inman* for respondent.

LINDSAY, C.—This is a suit for damages for personal injuries sustained by the plaintiff, alleged to be the result of the negligence of defendant. It is based upon the Federal Employers' Liability Act, and the answer admitted the facts necessary to bring it within the provisions of that act.

On January 11, 1924, plaintiff was employed by defendant as a section man upon the section of its line extending ten miles northwestward from the town of Hesston, Kansas, and had been at work, at a point about two miles northwest from Hesston, and at the time of his injury he, and the section foreman and another employee were returning from the place of work, to Hesston, riding upon a railroad motor car furnished by defendant for that purpose, and driven at the time by defendant's section foreman. At a point about one-half mile northwest of Hesston, defendant's track passed over a small bridge. As the motor car came upon the west end of this bridge, it left the rails, and the plaintiff was thrown off, run over, and injured. Plaintiff claims that from a point about two feet west of the west end of this bridge, and thence up to the west end of the bridge, there was a rise of the rails of about two and one-half inches, forming what is termed in the petition a "hump" and that the motor car as it approached the bridge, was being driven at an excessive rate of speed, and that thereby the car was caused to leave the rails. The plaintiff had a verdict in his favor.

The errors assigned are: (1) the overruling of defendant's demurrer at the close of the case; (2) the giving of plaintiff's Instruction 1 authorizing a verdict; and (3) the refusal of defendant's Instruction 8, as offered, its modification, and giving by the court in modified form.

The first assignment requires consideration of the evidence. The evidence shows that on the occasion in question and at all times Phillips, the section foreman, operated the motor car. Plaintiff was seated on the front end, and one Tatro, another employee, was seated on the rear end of the car. They were not assigned to these places on the car, but they sat as they desired; but, defendant's foreman testified that the instructions were that men so riding should watch the track. The plaintiff had been employed by defendant for short periods, at intervals, for a period of about three years. At this particular time he had been employed for seven days as an extra man, taking the place of an employee who was sick. The evidence as to there being a hump or rise in the rails immediately west of the bridge, consisted of the testimony of one Hale, and of the plaintiff, and of certain pictures. The plaintiff described the manner of the happening by saying: "Just as we went on the bridge the car gave a bump and I was thrown off." It seems clear that his injuries were such that at the time he did not and could not examine the place. He was soon afterward taken to a hospital. He testified that about the 19th of June, 1924, after his return from the hospital at St. Louis, he was in an automobile upon the public road running parallel to the railroad tracks near the point of the accident, and saw "a sharp hump in the track, a rise of about two or two and one-half inches, just as the tracks went onto the bridge;" that this rise started about two feet west of the bridge and that both rails had that rise in them.

Hale testified that at the time of plaintiff's injury he lived on a farm in the vicinity of the accident; that on the afternoon in question he was near by the scene of the accident, having driven there in his car to meet his children who were returning from school; that he saw the railroad motor car coming down toward the bridge at a point about thirty or forty rods from the bridge; that at about that distance from the bridge it entered a cut, and he did not see it afterward; that at the time he saw the car it was going about forty miles an hour; that he did not hear of the accident until the next day, but that on the next day, having heard of it, and when returning from Hesston, he looked at the bridge. He said the bridge had been worked on a short time before, and that it was higher than the roadbed, at each end; that he looked to see if he could find any sign of what "throwed" the car, and "couldn't see nothing more

than the rise in the track;'' that the track seemed to be level up to about two feet of the bridge, and then there was a rise to get on the bridge, of probably two or two and one-half inches. He stated that "about the fourth tie from 'the west end of the bridge was where the wheels had hit the bridge and went off about the center; following it up, straddle of the north rail about the center, and went off on the north side.'' He said he saw no mark indicating the car left the track before it got on the bridge. The ties were about eight inches wide, and three or four inches apart.

The plaintiff testified the motor car was running at a speed of twenty-five to thirty miles an hour, all of the way, and when approaching the bridge. Defendant introduced testimony tending to show there was no hump as described by plaintiff and Hale. Phillips, the foreman, and the other section man, Tatro, testified that on the day of the accident there was something wrong with the motor car; that the engine was missing and back firing; that at no time on the trip in which plaintiff was injured had the car travelled at a speed greater than twelve miles an hour. The theory of defendant was that the derailment of the motor car was caused by a block of wood being on one of the rails; and that it might have been placed there by school children; that this block of wood was not seen by Phillips, the foreman, because as he approached the bridge he was bending over, looking down to see, if he could, what was wrong with the motor car. The answer, however, did not refer to a block of wood. Phillips testified that on the day after the accident he went back to the place, found and picked up a block of wood, and took it to the tool house at Hesston; that it remained there for several months and then disappeared, and he did not know what had become of it; that there was a lock on the section house to which the foreman carried the key, but that at times the doors were left open and 'people could go in and out. Phillips said the block of wood, when he found it the next day, was lying about two feet from the northwest end of the bridge—about eight inches from the rail—and was split on an angle. He also testified that after the accident the motor car had a new cylinder and new pistons and rings put in, and was in better condition than before the accident; that after the accident he had tested its maximum speed, which was two minutes and forty seconds for a mile.

One Mooney, called by defendant, testified that about March 1, 1924, while plaintiff was in a hospital, he took from plaintiff a statement of facts regarding the accident; that at the time, he told plaintiff he was claim agent for the defendant; that he wrote a statement of the facts as given to him by plaintiff, read it over to him, and plaintiff signed it. In his statement introduced in evidence, the plaintiff stated that Phillips was working on the car to get it going, and probably did not see a block of wood on the rail which derailed

the car. According to this statement the plaintiff said that he did not see this block of wood until after the accident, and then saw where a part of it was leaning against the rail, and a part of it mashed on the rail; that he always looked ahead to see if anything was on the track, but at the time in question was not in a position where he could see the block, or else was looking to see what the defect was in the car.

The case was tried upon plaintiff's first amended petition. The original petition was not introduced in evidence, but plaintiff's attorney testified that he prepared the original petition upon what plaintiff had told him, and that plaintiff told him what he knew about it was what Phillips had told him; that plaintiff said Phillips had told him they ran over a block of wood. The inference may be drawn from this testimony that in the original petition it was charged that the derailment was caused by the negligent leaving of a block of wood on the track. Counsel for defendant set out part of the original petition in their brief. The block of wood was claimed to be about two inches square and about ten or twelve inches long.

Plaintiff, in rebuttal, testified that Mooney did not tell him he was claim agent, and he did not tell Mooney he saw the block of wood on the track; that he did not know exactly what was said about it. The witness Hale testified that he saw the block which Phillips had, and claimed to have gotten at the place where the accident occurred, and that said block of wood did not have any marks, cuts or dents or anything on it. Defendant's witness Harry Noell, of the division engineer's office, testified that he operated a motor car which was four hundred pounds lighter than the one used by the section men, and that he had run the car operated by him over the bridge in question at approximately thirty miles an hour and the car had never derailed with him.

Counsel for defendant insist that there was no causal connection shown between the negligence charged and the injury to the plaintiff. The argument is that there was no evidence either that the speed of the car, or the rise of the rails, or that both combined, caused the derailment of the car. The evidence for plaintiff tended to show, and counsel concedes that there was evidence tending to show, that the speed of the motor car as it approached the bridge was twenty-five to thirty miles an hour, evidence tending to establish that the hump in the track complained of consisted of a rise in the level of the rails of about two inches in a space of about two feet, and that after reaching this height the rails continued on across the bridge on a level, and evidence that the motor car was derailed at or near the west part of the bridge, or, near this change in the level of the track. Unquestionably it was neces-

sary for the plaintiff to show negligence on the part of the defendant, and that such negligence was the proximate cause of plaintiff's injury. The causal connection must be proved by evidence, as a fact, and not be left to mere speculation and conjecture; and it is not allowable to build one presumption upon another, and thus make a cause of action. [Warner v. Railroad, 178 Mo. 125; Strother v. Railroad, 188 S. W. 1102; Settle v. Railway, 127 Mo. 336; Yarnell v. Kansas City, Ft. Scott & M. Railway, 113 Mo. 570; State v. Lackland, 136 Mo. 26; Swearingen v. Railroad, 221 Mo. 644.] But, while the causal connection must be proved by evidence, as a fact, that rule does not require that there must be direct proof of that fact. "It will be sufficient if the facts proved are of such a nature, and are so connected and related to each other, that the conclusion therefrom may be fairly inferred." [Settle v. Railway, 127 Mo. 341.] From the facts which plaintiff's evidence tended to prove, to be taken as true for the purposes of the demurrer, it could be legitimately inferred that the derailment of the motor car was caused by the combined effect of the rise and change in the elevation of the tracks, and the high speed at which the car was moving at that point. This assignment is ruled against defendant.

The giving of plaintiff's instruction numbered 1 is assigned as error. In passing upon this instruction we call attention to allegations of plaintiff's petition. After the formal allegations the petition described what was termed the "hump" in the track at the bridge, the operation of the car by the foreman, and its derailment when it reached the track over the bridge, and plaintiff's injuries. The petition then ran as follows: "Plaintiff further says that the foreman was operating the motor car at a high and dangerous rate of speed over the rough and uneven track aforesaid, and at such a rate as to be dangerous in approaching and passing over the bridge, where the track was two or three inches higher than the other; that at the time the motor car was derailed or left the track the foreman operating said motor car was not watching the track or looking ahead, but had his head down looking at some part of the motor." Then follows the specifications of negligence: "Plaintiff further says that the injuries which he sustained as aforesaid were directly caused on account of the negligence of the defendant in running the motor car at a high and excessive rate of speed as aforesaid; that the operator of the motor car saw, or by the exercise of ordinary care could have seen, or known, that he was approaching the bridge aforesaid, and that there was danger of the car jumping the track when it struck the bridge at the place where the track was raised and formed the 'hump' as aforesaid, and had the operator of the motor car exercised ordinary care for the safety of plaintiff and other members of the crew he would

have watched for his approach to the bridge and slowed down the motor vehicle and kept it under such control that by the exercise of ordinary care he could have prevented it from jumping the track, but negligently failed to do so; that in view of the rough and uneven condition of the track and the 'hump' in the track at the bridge as aforesaid it was the duty of the operator of the motor car to run it at such a rate of speed and keep it under such control that it would not jump the track when it ran onto the bridge where the 'hump' was, as aforesaid, but that the operator of the motor car negligently failed to run it at such a rate of speed and keep it under control so that when it ran over the 'hump' aforesaid it would not jump the track, but negligently failed to do so.''

Plaintiff's said Instruction 1 is as follows:

''The court instructs the jury that the plaintiff alleges in his petition that the injuries which he sustained were caused on account of the negligence of the defendant or its foreman in running the motor car at a high and excessive rate of speed and also that the operator of the motor car saw, or by the exercise of ordinary care could have seen or known, that he was approaching the bridge aforesaid and that there was danger of the car jumping the track when it struck the bridge at the place where the track was raised and formed a hump, if so, and that if the operator of the motor car had exercised ordinary care for the safety of plaintiff he would have watched for his approach to the bridge and slowed down the motor car and kept it under such control that by the exercise of ordinary care he could have prevented it from jumping the track.

''The court, therefore, instructs you that if you find from the evidence in this case that the defendant or the operator of the motor car was guilty of either one of these acts, and that such act, if you find defendant guilty of either of such acts, was negligence as defined in these instructions that contributed in whole or in part to cause the injuries, if any, sustained by plaintiff, then your verdict will be for the plaintiff.''

The petition charged that some of the ties west, and in the vicinity, of the bridge, were rotten or missing, and that the track there was rough and uneven before coming to the hump; but there was no evidence of that, and the court, by instruction, withdrew that charge. The existence, or maintenance of a hump in the track at the bridge was not alleged to be negligence; but, the plaintiff by his petition made the existence of a hump at that place a material issue, and it was a sharply contested issue under the evidence. The petition was framed upon the theory that the speed of the car was negligence, because at such a rate as to be dangerous in approaching and passing over the place, the hump, where the track was two or three inches

898

higher than the other. The instruction is in its terms, uncertain and confusing. It does not refer the jury to the petition to ascertain the issues; but, in the first sentence, the court undertook to tell the jury what were the acts of negligence charged in the petition, and followed that in the second sentence by instructing the jury that if they found defendant was guilty of either one of those acts, and that if such act, either one of them of which the defendant was found guilty, was negligence, and contributed in whole or in part to cause the injury to plaintiff, the verdict should be for the plaintiff. As we construe the petition the cause of action stated therein was based upon a conjunction of the existence of a hump and of the speed of the car in approaching it, which created danger to the safety of the plaintiff; and, upon knowledge on the part of defendant, actual or imputable, of that danger. But, the instruction permitted a recovery if the derailment and injury were caused wholly by the excessive speed, without regard to the existence of the particular condition at the place of derailment, which plaintiff alleged made the high speed dangerous. In that respect the instruction permitted a recovery without requiring a finding of a fact, which the plaintiff alleged as a part of his cause of action; and the existence or non-existence of that fact, was a sharply contested issue. This was error. [State ex rel. Long v. Ellison, 272 Mo. 571, 582; Hiegold v. United Railways, 308 Mo. 142, 148; Beeson v. Fleming, 315 Mo. 177, 184.] In brief, the instruction seems to tell the jury that the petition alleged plaintiff's injuries were caused on account of the negligence of the defendant in (a) running the motor car at a high and excessive rate of speed; (b) that the operator of the car saw or could have seen that there was danger of the car jumping the track where the track was raised and formed a hump. We are unable to say what meaning, if any, the jury might have given to the words "if so," injected in the first sentence of the instruction. Under plaintiff's petition and evidence, plainly, there was reliance upon the fact that there was a hump in the track, and that being so, the instruction should have required the jury to determine whether or not a hump existed. The instruction is misleading and confused as to meaning. It purported to cover the case, and authorized a verdict, but failed to give the jury a clear direction to guide them.

The other complaint made by defendant has reference to the action of the court in refusing Instruction 8, as offered, and giving it in modified form. Defendant did not assign this as error in the motion for a new trial, and having given the trial court no opportunity to correct his error, if any, cannot be heard to complain of the alleged error on appeal.

[Hoke v. Central Twp. Farmers' Club, 194 Mo. 576; Friedman v. Underwood, 249 S. W. 64; Sec. 1512, R. S. 1919.]

For the error in giving plaintiff's Instruction 1, the judgment is reversed and the cause remanded. *Seddon* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.