MELVIN M. GOOD, Administrator of the Estate of ROBERT M. GOOD, v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—97 S. W. (2d) 612.

Division Two, August 20, 1936.

*Carl S. Hoffman, W. H. Martin* and *Montgomery, Martin & Montgomery* for appellant.

*W. W. McCanles* for respondent.

BOHLING, C.—This cause is pending on rehearing. The action is under the Federal Employers' Liability Act. Appellant, Missouri-Kansas-Texas Railroad Company, appeals from a judgment for $10,000 in favor of respondent, Melvin M. Good, as administrator of the estate of Robert M. Good, deceased. We follow the outline of the facts stated in appellant's brief, quoting therefrom in part.

Robert M. Good, deceased, prior to the accident resulting in his death, had been an employee of appellant for many years, serving as foreman over one of its bridge and building crews engaged in carpenter work in connection with building and repairing appellant's line of railroad. The crew lived in bunk cars which were moved from point to point as occasion required the services of the crew. The bunk cars would be set on sidings at or near the point where the crew was working and the foreman was furnished a motor car to transport the crew, their tools, equipment and materials to and from the place of work.

On December 8, 1930, the motor car on which deceased was riding, together with other members of the crew, was derailed and deceased received injuries from which he died on December 21, 1930. At the time deceased was seventy years of age, with a life expectancy of eight years, and was earning $165 a month. He was survived by a daughter, Mrs. Grace Warzel, to whom he had been making contributions, estimated by one witness, of $40 a month or a little better.

The crew had been working out of Walker, Missouri, and on the day in question was to put a cap in a bridge on appellant's main line some miles south of Walker and near Deerfield, Missouri. The crew, tools, etc., were transported to this point by means of the motor car. The work was completed about noon. One of appellant's trains from the south was due about this time, and Mr. Good went south on the tracks to protect against the train while the crew placed the motor car on the track and loaded the tools and equipment.

The motor car in question was of a standard make and type. "The width of the car was four feet eight inches and its length six or six and one-half feet. It was propelled by a gasoline motor which was on the front of the car and the driving machinery extended back through the center of the car. The motor and machinery were housed in and the top of the housing was boarded over, forming a platform upon which the men rode. Along each side of the car and level with the bed proper there were troughs in which the tools and other equipment were loaded. . . . At the rear of the car the evidence shows the troughs were fourteen inches wide and this width was maintained

up to within eighteen inches of the front. At this point there was an offset in the motor housing and from there on the troughs were six or eight inches wide. Along the outside edges of the troughs there was an angle iron about three inches high with plates at each wheel to protect against material getting on the wheels. At the ends of these troughs, as a part of the equipment of the car at the time it came from the factory, were wooden blocks about 1½ inches high, which were bolted to the frame. . . .

"The loading of the car on the day in question was supervised by the assistant foreman of the gang, one Lawrence Aiken. The larger portion of the tools and other materials were placed on the right side of the car and on the trough on the left side were loaded the following articles: two S wrenches, a timber bar, a tool box and a tank stave. The tank stave was a timber" two and one-half "inches by eight inches by sixteen feet, which was placed on edge on the outside of the trough and extended beyond the car on each end. The tool box was loaded in the back end of the trough and between it and the tank stave the timber bar in question was laid. In front of the tool box and inside the timber bar the two S wrenches were placed. The timber bar in question was a steel bar hexagonal in shape and one and one-fourth inches in diameter. One end was pointed and the other flat. The bar was five and one-half feet long and fitted nicely into the trough with a few inches to spare on either end." Under ordinary loading conditions, the customary and usual method of loading the bar was to lay it in the trough of a properly equipped car. After loading, the car was backed down to where Mr. Good was, he got on, and they proceeded north toward Walker.

The crew had places assigned to them on the car—three on each side. The seats, with the exception of the driver's, faced the sides of the car. The driver's seat was a board extending from the housing or platform out over the trough on the left-hand side, permitting the driver to sit facing the direction the car traveled. Foreman Good's position was on the front left corner, which he occupied on the trip in question. There was testimony that it was part of Mr. Good's duty to watch ahead along the track for crossings, etc.; and that he rode sitting sideways, with one foot on the tank stave and the other on a bar along the front of the car, leaning forward on a rod above and across the front of the platform, so he could look ahead down the track. Aiken, the assistant foreman, sat on the driver's seat immediately behind Mr. Good, facing the direction the car was going. Another of the crew sat immediately behind Aiken, facing the rear. Mr. Morarity was on the front right side of the car, across from Mr. Good, and the other two to the rear of him.

"When the car had proceeded about 1¾ miles from where they picked Good up, a stop was made and Good got off and went to a

telephone to find out about the train which was coming behind them. . . . The journey was resumed but at a point about one mile from the scene of the accident the car was again stopped while the brake on the left side was fixed. This consumed about four or five minutes. The timber bar was in its proper place at that time. After the journey was resumed and as the car was going up a slight grade at a speed of about twenty miles an hour a jolt was felt and the car seemed to raise up and leave the track. Good was thrown off at the time of the derailment and received the injuries from which he died." The derailment occurred about one hundred yards after the car had passed a crossing.

"No one of the witnesses know what caused the accident. Afterwards, the timber bar was found back near the point where the car had left the track, bent in an S shape. About this point there was a fresh hole in one of the ties as though some sharp instrument, such as a timber bar, had been jabbed in it. This hole was a few inches on the inside of the west rail. The timber bar was lying about two feet west of the track and about six feet north of this hole. A pipe which extended across the front of the car, level with the bed, at a point eight inches from the left side, was bent and that portion of the platform upon which Good was sitting was splintered and had been pulled loose from its hinges. The sprocket wheel on the motor was found to be broken upon an examination made following the accident.

"The theory upon which the plaintiff's petition proceeds is that the timber bar heretofore mentioned 'was caused to shake and fall off said motor car' causing the derailment, and that the defendant's agents and servants other than Robert M. Good negligently violated one of the defendant's rules requiring that 'tools and other loose objects must be placed (on motor cars) so they cannot fall off' and negligently violated a custom not to place tools and other loose objects on motor cars so that they are likely to fall off, and negligently failed to keep a proper watch upon the timber bar in question and negligently allowed and permitted the bar to fall off. The answer filed by the defendant is a general denial coupled with pleas of contributory negligence and assumption of risk.

"The plaintiff produced as a witness, one Henry Poore, who was a member of the bridge crew, and who testified that at the time of the accident the small wooden block at the front end of the trough on the left side of the motor car was missing. According to this witness, the block had been missing since the Saturday before the accident. The accident happened on Monday, December 8, 1930. This witness admitted that in the statement taken from him by one of the defendant's claim agents immediately following the wreck he had made no mention of the fact that the block was missing, nor

had he at any time claimed that such block was missing until the trial of an action brought by him to recover for injuries sustained in this accident. He further admitted that at the time of that trial he had testified that Foreman Good had stated that he, Good, would watch the timber bar. At this trial he denied that the foreman had made any such statement. Plaintiff's witness Aiken testified positively that the block was in place, as did also plaintiff's witness, O. O. Horton, who had inspected the car immediately after the accident. The other members of the crew testified that they had not noticed the block on this particular day, but that the last time they had had occasion to notice it, it was in place and securely bolted to the frame.'' Plaintiff's case was submitted on the theory defendant was negligent in placing the timber bar on the motor car in such a manner that it was not secure and was reasonably likely to fall therefrom while said car was in operation and in failing to watch and guard said timber bar to keep the same from falling from said car while the same was being operated.

''Certain of the defendant's rules applicable to bridge and building foremen were identified as such and were offered in evidence. These rules are as follows:

'' 'Rule 200: Employees to whom track cars are assigned are responsible for the proper use and condition of cars in their charge; report must be made to the superior officer when any car is in need of repairs, or in the opinion of the employee in charge is unsafe to operate.'

'' 'Rule 207: . . . Tools and other loose objects must be placed so they cannot fall off; track jacks must be carried on rear of car. Track cars must not be loaded so heavily or operated in such manner that they cannot be set off the track in advance of approaching trains.'

'' 'Rule 226: Employees in charge of motor cars must make inspection at end of each day or trip to see that bolts are kept tight and unsafe condition corrected. . . .'

'' 'Rule 465: Bridge and building foremen report to and receive instructions from the supervisor of bridges and buildings.'

'' 'Rule 466: They are responsible for the safe, proper and economical performance of the work assigned to them. . . .'

'' 'Rule 467: They will have full charge of all forces under them. . . .'

''It was developed by the evidence that the defendant's bridge and building foremen were required to have one of these rule books and to familiarize themselves with the rules. This was not required of subemployees.

''It was further developed by the evidence that this motor car was in the charge of Foreman Good and that it was his duty to inspect and examine the motor car before beginning the trip on the

morning of the accident for the purpose of discovering any defects therein and remedying same and that it was his duty, had the block in question been missing at that time, to have discovered its absence and replaced it before permitting the car to be used. It was further developed by the evidence that it was the duty of Foreman Good to see that his car was safely and properly loaded before permitting it to begin the return trip and that it was the duty of each employee, including the foreman, to keep a vigilant watch upon the tools and other equipment loaded upon the motor car in the vicinity of such employee and that it was Foreman Good's duty particularly to watch the left front end and that he" and Aiken were the only employees "in a position to watch the timber bar. It was further developed by the evidence that the position of the timber bar on the car at the time Mr. Good got on and throughout the trip was plainly apparent to him, and that there was nothing to obstruct his vision of the bar or the front end of the trough where the block was supposed to have been missing." There was also testimony that it was the duty of Aiken, assistant foreman, who was driving, to inspect the car and see that it was in first class condition; and Mr. Horton, bridge foreman for appellant, testified that it was the duty of the assistant foreman, in the absence of the foreman, to see that the car was properly loaded, and that the foreman had a right to assume the proper discharge of duties by the assistant foreman.

After careful consideration of the issues presented on rehearing, we conclude that the opinion of Commissioner WESTHUES on the original presentation of the cause is correct. We adopt the same with such additions and modifications as appear proper in the light of the presentation on rehearing.

"Only three questions are presented for our review. They are: first, the refusal of the trial court to sustain a demurrer to the evidence, which involves the question of whether deceased's negligence was the sole cause of his injuries and assumption of risk; second, the giving of respondent's Instruction 'A'; and third, the question of the amount of the verdict being excessive. These in the order stated.

■ "In passing upon the demurrer to the evidence we must consider the testimony in its most favorable light to plaintiff and sustain the finding of the jury, if it can be done upon any theory consistent with the law and the facts in evidence. Appellant contends that, under the rules of the company of which deceased had knowledge, it was deceased's duty to have discovered the block was missing, if it was missing, and to have replaced it before using the car. Appellant says in substance that if the missing block was the proximate cause of the injury plaintiff cannot recover because deceased's own negligence was the sole cause of the injury." ■ At appellant's request, the trial court instructed the question of whether a stop

block was on the front of the left trough "is not an issue of negligence in this case and even though you should find and believe from the evidence that such block was missing at the time the accident occurred, you cannot predicate the liability of this defendant upon the absence of such block." It follows, the verdict was not predicated on negligence in failing to maintain said block, if in fact it was missing. "The trial court also instructed the jury that if deceased's negligence was the sole cause of the injury then plaintiff was not entitled to a verdict. The evidence in the case must, therefore, be sufficient to sustain the verdict upon some other ground or theory or the judgment of the trial court must be reversed.

"Appellant in its brief says:

■ " 'No one of the witnesses testifying knew what caused the accident. The plaintiff's case rests entirely upon circumstantial evidence. Where a plaintiff's case rests upon circumstantial evidence, the burden is upon him to prove a state of facts, which, if accepted by the jury as true, would point with certainty to the pleaded negligence as the proximate cause of the injury. . . . The circumstances developed by plaintiff's evidence have to do with the location of the timber bar after the accident back near the point where the car left the track, its condition, the mark upon the tie and the damage to the motor car. These circumstances point directly to the conclusion that the timber bar figured in the accident. . . .' Appellant then proceeds to argue that such evidence was not sufficient to authorize the jury to find that the bar was placed on the car in such a position as would convict defendant's servants of negligence; also that the bar could not have jostled forward and that by the law of physics it would have moved backward. Be that as it may, the physical facts remain and we agree with appellant's statement in its brief where it is said 'these circumstances point directly to the conclusion that the timber bar figured in the accident.' There was no evidence of any unusual jerking of the car prior to the accident. The car was being operated upon a main line of defendant's tracks, which tracks as a rule are smooth when compared with side tracks. According to all the witnesses, who were upon the car at the time, it suddenly raised up and left the track. The mute evidence after the accident, indicating the cause thereof, was the bar being bent into an 'S' shape; the fresh mark upon the tie and the left portion of the car, where deceased had been sitting, being dismantled. All of these facts point to but one conclusion, that is, the bar fell from the car, one end struck in a tie and the other caught under the upper portion of the car causing it to raise and leave the track." And paraphrasing Commissioner WESTHUES' conclusion: Was it unreasonable for the jury to draw the inference from these facts, when all the facts and circumstances in evidence are viewed in the light most favorable to

plaintiff, that the timber bar was so loaded that it was likely to fall from the car? We think not. If the bar was placed upon the car so it might fall off under the attending conditions, the jury was authorized to find that Mr. Aiken, assistant foreman, who was in charge and supervised the loading in the temporary absence of deceased, was guilty of negligence and that such negligence was the approximate cause of or, at least, contributed to the injury sustained by the deceased. [Brainard v. Missouri Pac. Railroad Co., 319 Mo. 890, 895, 5 S. W. (2d) 15, 17(1-4); Thompson v. City of Lamar, 322 Mo. 514, 537, 17 S. W. (2d) 960, 970(6-8).]

"Appellant also urges that it was the duty of deceased, while the car was moving, to watch the tools and keep them from falling from the car and that a failure to do so would constitute negligence. If that be true then the jury was authorized to find that the negligence of deceased combined with the negligence of the assistant foreman caused the injury. The case comes within the rule stated in Rocco v. Lehigh Valley Ry. Co., 288 U. S. 275, 77 L. Ed. 743, where it was said: 'The jury adjudged him guilty of contributory negligence and moulded its verdict accordingly. But it was open to the jury, as above shown, to find that the motorman of the train was also guilty of negligence which contributed to the collision. Rocco's infraction of the rule was a concurrent cause, but may not in any proper sense be held the primary cause of the accident. His negligence did not preclude a finding by the jury that his death was in part due to the negligence of the appellant's servants. The Act imposes liability upon the carrier for injury or death resulting "in whole or in part" from the negligence of any of its officers, agents or employees (U. S. C. title 45, sec. 51).' The contributory negligence of deceased was not a bar to recovery. Contributory negligence, under the Federal rule, may be pleaded and proven in mitigation of damages. This question was submitted to the jury by instructions given at appellant's request." Furthermore, the jury might have found deceased was discharging his duty of watching ahead for possible obstructions at the time of the accident.

Among the instructions given by the court was a general instruction on the risks assumed by the deceased, and another advising the jury that if the timber bar was negligently placed upon the car in an unsafe manner and its position was open and obvious and deceased knew of such condition, or could have known of the same by the exercise of ordinary care, and deceased permitted the bar to remain in an unsafe position then deceased assumed all risk of injury caused by such unsafe loading of said bar.

The issues made and submitted differentiate the instant case from the case of Nichols v. Chicago & A. Railroad Co. (Mo.), 225 S. W. 679. In the instant case the instruction authorizing a verdict for

respondent submitted the two grounds of negligence (each of which we have heretofore considered supported by evidence justifying the submission of the issue) in the conjunctive; and the jury was required to and by its verdict did find that appellant negligently, in violation of a rule or custom established by appellant, failed to watch and guard the timber bar in question (an issue supported by ample evidence and sufficient in itself to authorize a verdict for respondent had respondent so submitted the case) and, in addition, was negligent in the loading of said bar; whereas the only negligence involved on the appeal in the Nichols case related to the loading of a tool (no violation of a pleaded rule or custom being involved), which plaintiff himself testified had been loaded in the customary manner. [See, as to an instruction submitting two or more grounds of negligence in the conjunctive: La Pierre v. Kinney (Mo. App.), 19 S. W. (2d) 306, 311(4-6); Rigg v. Chicago, B. & Q. Railroad Co. (Mo.), 212 S. W. 878, 879(1); Tash v. St. Louis-S. F. Ry. Co., 335 Mo. 1148, 1163(3), 76 S. W. (2d) 690, 697(9).] In Unadilla Val. Ry. Co. v. Caldine, 278 U. S. 139, 73 L. Ed. 224, 49 Sup. Ct. 91; Frese, Admrx., v. Chicago, B. & Q. Railroad Co., 263 U. S. 1, 68 L. Ed. 131, 44 Sup. Ct. 1; Davis v. Kennedy, Admrx., 266 U. S. 147, 69 L. Ed. 212, 45 Sup. Ct. 33; and Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 60 L. Ed. 732, 36 Sup. Ct. 406, the negligence of the deceased, in violating some personal duty imposed by rule of defendant company or by statute designed for the protection of himself and others in the situation confronting him, was considered the primary cause of the events directly resulting in his death, unaccompanied by negligence of another or others directly contributing to the resulting events and consequences thereof and chargeable to defendant. [See discussion on these cases in Brock v. Mobile & O. Railroad Co., 330 Mo. 918, 934 et seq., 51 S. W. (2d) 100, 106 et seq.; also Annotation 72 A. L. R. 1345.] In Atchison, T. & S. F. Ry. Co. v. Saxon, 284 U. S. 458, 76 L. Ed. 397, 52 Sup. Ct. 229, the evidence failed to show causal negligence on the part of defendant. In the instant case there was evidence upon which to base a finding of a causal connection between the negligence of the assistant foreman in the loading of the tools in the absence of deceased and in watching and guarding the same while the car was in operation, the accident and deceased's injury; and, under the evidence, we are not warranted in holding, as a matter of law, that the hazard was such an ordinary risk, or was so obvious or known and appreciated by deceased that deceased assumed the risk, or that deceased's negligence was the sole cause of the accident, barring recovery. The rules placed the duty to inspect and report any need of repairs or unsafe condition to their superiors upon the "employees in charge of the motor cars" and the responsibility for their proper use and condition upon "employees to whom track cars

are assigned." Other rules specifically mention "bridge and building foremen." There was evidence that the assistant foreman, as driver of the car, was under a duty to inspect the car to see that it was in good condition and to supervise the loading in the absence of the foreman and also to watch and guard the tools on the occasion in question.

"Appellant complains of Instruction a. This was plaintiff's main instruction. The part objected to, as quoted in appellant's brief, reads as follows:

" '. . . and if you further find and believe from the evidence that at the time and place in question, *as shown by the evidence,* if shown by the evidence, the defendant and its servants and employees other than Robert M. Good, failed and neglected to watch and guard the timber bar in question, . . . and . . . were guilty of carelessness and negligence . . . and that as a direct result of said carelessness and negligence, if any, the timber bar in question fell or was caused to fall from said motor car, if it did, and said car was caused to be derailed, *as shown by the evidence,* if shown by the evidence, and . . .' "

"It is argued that the phrase 'as shown by the evidence' amounted to a direct comment upon the evidence by the trial court. Had the phrase not been followed by the words 'if shown by the evidence.' it could be argued that the instruction would have assumed the servants and employees, other than deceased, had failed and neglected to watch and guard the timber bar. As worded the instruction required the jury to find such facts before authorizing a verdict. The words 'as shown by the evidence' were entirely useless in the instruction. We have examined the whole instruction and find that it required the jury to find the necessary facts for plaintiff to recover before authorizing a verdict. We are of the opinion that the error was not prejudicial because it could not have misled the jury. The instruction is also assailed because it referred to the rule of the company which required the employees to place the tools and equipment upon the car 'so they cannot fall off.' It is argued that the jury was only required to find that the bar fell from the car to authorize a verdict for plaintiff. The instruction, however, required the jury to find, before authorizing a verdict, that the servants were negligent in that respect. The instruction, therefore, is not subject to the criticism made by appellant.

"The jury returned a verdict assessing $3,500 as compensatory damages to the plaintiff and $6,500 for pain and mental suffering. Appellant contends both items to be excessive. Under the ruling of this court en banc, in the case of Talbert v. Chicago, R. I. & P. Ry. Co., 321 Mo. 1080, 15 S. W. (2d) 762, the item of $6,500 cannot be held to be excessive. In the Talbert case a judgment for $10,000 was

approved. There the deceased lived only an hour after the injury was received. In the case at bar the deceased lived twelve days. Dr. J. A. Newman, who waited on deceased, testified that he 'had a fracture of the left thigh, both bones broken at the ankle and was suffering from internal injuries which caused peritonitis or inflammation of the bowels from which he died,' also 'he was suffering intense pain, vomiting and bloat in the abdomen.' Other witnesses testified to the same effect. Appellant contends that due to the contributory negligence of deceased, as shown by the evidence, the verdict should be held excessive. This question was primarily for the jury and it was submitted to them by proper instructions. We are, therefore, not authorized to disturb that finding unless it can be said that it was not authorized by the evidence. In view of the amount allowed we cannot say, as a matter of law, that the jury did not take the question of contributory negligence into consideration.

"Neither can the item of $3,500, as compensatory damages, be considered so excessive as to justify our interference. Evidence was adduced that deceased gave as much as" $40 per month or a little better "to Mrs. Warzell, a daughter of deceased, whose husband was not an able-bodied man. The life expectancy of deceased was eight years. The rule for measuring damages in cases of this nature, that is under the Federal Employers' Liability Act, is the present cash value of the future benefits of which the beneficiary was deprived, *making allowance according to circumstances for the earning power of money*. [Chesapeake & Ohio Ry. Co. v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117.] Considering the evidence in the case, the amount allowed by the jury cannot be held to be excessive."

The judgment is affirmed. *Cooley* and *Westhues*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.